## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## BRUNSWICK DIVISION

ANDRES FERNANDEZ,

        Petitioner,

    v.

WARDEN, FCI JESUP,

        Respondent.

CIVIL ACTION NO.: 2:25-cv-2

## ORDER AND REPORT AND RECOMMENDATION

Petitioner Andres Fernandez ("Fernandez"), who is currently incarcerated at the Federal Correctional Institution in Jesup, Georgia, filed a 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus. Doc. 1. Respondent filed a Motion to Dismiss Fernandez's Petition, and Fernandez filed a Response. Docs. 4, 6. Fernandez also filed a Motion to Supplemental Emergency Motion for Expedited Ruling, to which Respondent filed a Response and Fernandez filed a Reply. Docs. 7, 8, 9, 12. Fernandez also filed a Motion for Judicial Intervention, for Expeditious Injunctive Relief, and for an Evidentiary Hearing. Doc. 13.

For the following reasons, I **RECOMMEND** the Court **DENY** Respondent's Motion to Dismiss and **DENY** Fernandez's request for injunctive relief. I **DENY** the Motion for Expedited Ruling and Fernandez's requests for judicial intervention and for a hearing. If the Court adopts this Report and Recommendation, the parties should be prepared to submit their Answer and Reply addressing Fernandez's First Step Act and Second Chance Act claims. The Court will issue a schedule for those filings after consideration of this Report and Recommendation.

**BACKGROUND**

Fernandez was convicted in the District Court for the Middle District of Florida of several counts of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2.  Fernandez was sentenced to 120 months in prison.  Doc. 4-1 at 7.  Fernandez has a statutory release date of March 31, 2029, via good conduct release, and a projected release date of March 31, 2028, via First Step Act ("FSA") release.  Id.  Fernandez also has a home detention or residential reentry center eligibility date of October 1, 2027.  Id.

In his Petition, Fernandez asserts that the Bureau of Prisons ("BOP") has not properly credited his sentence under the FSA, resulting in a later placement in pre-release custody.  Doc. 1 at 18, 20.  Fernandez asks the Court to order the BOP to apply his earned FSA credits, to set him for placement in a residential re-entry program, and to re-apply his Second Chance Act credits. Id. at 19.

Respondent asks this Court to dismiss Fernandez's Petition because Fernandez failed to exhaust his administrative remedies regarding the claims he raises in this Petition.  Doc. 4 at 3. In addition, Respondent contends that the Court lacks jurisdiction under the Administrative Procedures Act ("APA") to review Fernandez's FSA claim and nothing in the Second Chance Act alters the BOP's discretion as to prisoner placement.  Id. at 6, 10.

**DISCUSSION**

**I.      Fernandez Exhausted His Available Administrative Remedies Before Filing His Petition**

In his Petition, Fernandez asserts he exhausted his administrative remedies regarding the calculation of his FSA credits, beginning with the informal dispute process (BP-8) on October 16, 2022, and concluding with the final step of an appeal with the Central Office (BP-11) on February 2, 2023.  Doc. 1 at 17.

Respondent states Fernandez claims his cause of action did not accrue until December 2024 when his placement in a halfway house was revised; he cannot claim exhaustion for remedies filed in 2022 and 2023 for claims that did not arise until 2024.  Doc. 4 at 5.

A.     **Generally, a Petitioner Must Fully Exhaust All Available Administrative Remedies Before Filing a § 2241 Petition**

The Eleventh Circuit Court of Appeals has held a § 2241 petitioner's failure to exhaust administrative remedies is not a jurisdictional defect.  Santiago-Lugo v. Warden, 785 F.3d 467, 474 (11th Cir. 2015); see also Fleming v. Warden of FCI Tallahassee, 631 F. App'x 840, 842 (11th Cir. 2015) ("[Section] 2241's exhaustion requirement was judicially imposed, not congressionally mandated, and . . . nothing in the statute itself support[s] the conclusion that the requirement [is] jurisdictional.").  Nevertheless, the Eleventh Circuit has noted "the exhaustion requirement [is] still a requirement and that courts cannot 'disregard a failure to exhaust . . . .'" Fleming v. Warden of FCI Tallahassee, 631 F. App'x 840, 842 (11th Cir. 2015) (citing Santiago-Lugo v. Warden, 785 F.3d 467, 475 (11th Cir. 2015)).

Exhaustion of administrative remedies must occur first in the agency setting to allow "the agency [to] develop the necessary factual background upon which decisions should be based" and to give "the agency a chance to discover and correct its own errors."  Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)).  Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  Woodford v. Ngo, 548 U.S. 81, 93 (2006).[1]

---

[1]     Although Woodford was a civil rights suit rather than a habeas petition, the Court "noted that the requirement of exhaustion is imposed by *administrative law* in order to ensure that the agency addresses

The United States Supreme Court has noted exhaustion must be "proper."  Id. at 92.

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural

rules because no adjudicative system can function effectively without imposing some orderly

structure on the course of its proceedings."  Id. at 90–91.  In other words, an institution's

requirements define what is considered exhaustion.  Jones v. Bock, 549 U.S. 199, 218 (2007).

The Eleventh Circuit has explained—though only in an unpublished opinion—that a

§ 2241 petitioner need only exhaust "available" administrative remedies.  Blevins v. FCI

Hazelton Warden, 819 F. App'x 853, 856 (11th Cir. 2020) (citing Ross v. Blake, 578 U.S. 632

(2016)).  As a result, a petitioner need not exhaust administrative remedies:

> (1) where despite what regulations or guidance materials may promise, the
> administrative process operates as a simple dead end—with officers unable or
> consistently unwilling to provide any relief to aggrieved inmates, (2) where the
> administrative process is "so opaque that it becomes, practically speaking,
> incapable of use" because "no ordinary prisoner can discern or navigate it, and (3)
> where prison administrators thwart inmates from taking advantage of a grievance
> process through machination, misrepresentation, or intimidation.

Id. (cleaned up); see also Parra-Orona v. Jenkins, No. 1:23-CV-2434, 2024 WL 6083897, at *2

(N.D. Ga. Jan. 16, 2024) (citing Blevins and evaluating the unavailability of administrative

remedies in the § 2241 context), adopted by, 2024 WL 6083898 (N.D. Ga. Mar. 26, 2024);

Ridling v. Yeager, No. 1:24-CV-01785, 2025 WL 1892707, at *3 (N.D. Ala. June 13, 2025)

(same), adopted by, 2025 WL 1885636 (N.D. Ala. July 8, 2025).

Although a petitioner must ordinarily exhaust administrative remedies before filing a

§ 2241 petition, there are some circumstances where exhaustion may be excused.  In McCarthy

v. Madigan, the Supreme Court recognized "three broad sets of circumstances" that may justify

---

the issues on the merits."  Fulgencio v. Wells, CV309-26, 2009 WL 3201800, at *4 (S.D. Ga. Oct. 6,
2009) (emphasis in original) (quoting Woodford, 548 U.S. at 90) (internal punctuation omitted).  Thus,
exhaustion requirements are applicable to habeas petitions.

excusing a claimant from exhausting administrative remedies: (1) when "requiring resort to the administrative remedy may occasion undue prejudice to subsequent assertion of a court action"; (2) when there is "some doubt as to whether the agency was empowered to grant effective relief"; and (3) when "the administrative body is shown to be biased or has otherwise predetermined the issue before it . . . ."  503 U.S. 140, 146–48 (1992) (internal quotation marks omitted) superseded by statute, 42 U.S.C. § 1997e(a).  The Eleventh Circuit has not spoken directly on whether exhaustion can be excused in the § 2241 context under the three McCarthy circumstances, but in an unpublished opinion, has suggested it can be.  See Shorter v. Warden, 803 F. App'x 332, 336 (11th Cir. 2020) (suggesting McCarthy should be applied to § 2241 petitions)).  District courts in this Circuit have similarly applied McCarthy in the § 2241 context. See, e.g., Wilson v. Sawyer, No. 4:20-CV-00326, 2020 WL 7346550, at *2 (N.D. Fla. Nov. 13, 2020), adopted by, 2020 WL 7342656 (N.D. Fla. Dec. 14, 2020); Robelo-Galo v. Janson, No. 1:24-CV-00931, 2025 WL 2093409, at *1 (N.D. Ga. Feb. 24, 2025), adopted by, 2025 WL 2093406 (N.D. Ga. Mar. 14, 2025).

There is some uncertainty about whether there is a "futility" exception to the exhaustion requirement for § 2241 petitioners.  See Zapata-Molina v. Stone, No. CV 321-013, 2021 WL 2670725, at *2 (S.D. Ga. June 1, 2021) (noting it is unclear whether a futility exception exists in the § 2241 context), adopted by, 2021 WL 2673670 (S.D. Ga. June 29, 2021).  McCarthy itself suggests that the second and third circumstances identified in that case encompass futility.  See McCarthy, 503 U.S. at 148 (noting that where an agency is not empowered to grant effective relief, seeking application for administrative relief may be "utterly futile" and that where a decisionmaker has already concluded rules were valid, seeking administrative remedies would present same challenge to the same decisionmaker would be a "futile act").  Additionally,

in <u>Shorter</u>, the Eleventh Circuit suggested that the petitioner's futility argument related to one of the three <u>McCarthy</u> circumstances.  803 F. App'x 336.  District courts applying <u>McCarthy</u> have also recognized that the <u>McCarthy</u> circumstances case likely encompass some futility exception.  <u>See, e.g.</u>, <u>Jones v. Zenk</u>, 495 F. Supp. 2d 1289, 1299–1300 (N.D. Ga. 2007) ("[T]he exceptions recognized in <u>McCarthy</u>, including the futility exception, apply to the exhaustion requirement in § 2241 cases."); <u>Robelo-Galo v. Janson</u>, No. 1:24-CV-00931, 2025 WL 2093409, at *2 (N.D. Ga. Feb. 24, 2025), <u>adopted by</u>, 2025 WL 2093406 (N.D. Ga. Mar. 14, 2025).

Thus, to the extent a petitioner demonstrates futility by showing the existence of one of the three circumstances described in <u>McCarthy</u>, a court may excuse the exhaustion requirement.  There does not, however, appear to be any separate, independent futility exception, outside of the three <u>McCarthy</u> circumstances.[2]  Where a petitioner relies on futility, the petitioner has the burden to demonstrate futility and "extraordinary circumstances."  <u>Jaimes v. United States</u>, 168 F. App'x 356, 359 & n.4 (11th Cir. 2006).

---

[2]    In <u>McGee v. Warden, FDC Miami</u>, the Eleventh Circuit expressly concluded that there is no futility exception to the exhaustion requirement for § 2241 petitions.  487 F. App'x 516, 518 (11th Cir. 2012).  However, that conclusion was based on a view that exhaustion was a jurisdictional requirement, which was later rejected.  Therefore, the conclusion about a futility requirement expressed in <u>McGee</u> is likely no longer correct.  <u>See</u> <u>Straughter v. Warden, FCC Coleman - Low</u>, 699 F. Supp. 3d 1304, 1308 (M.D. Fla. 2023) (explaining that the conclusion in <u>McGee</u> likely did not survive <u>Santiago-Lugo v. Warden</u>, 785 F.3d 467 (11th Cir. 2015)).

Some courts have continued to state there is no futility exception to the exhaustion requirement for § 2241 petitioners.  <u>See, e.g.</u>, <u>Martinez-Palmero v. Jenkins</u>, No. 1:23-CV-2763, 2023 WL 12119160, at *2 (N.D. Ga. Nov. 17, 2023), <u>adopted by</u>, 2024 WL 6081629 (N.D. Ga. Feb. 27, 2024); <u>Moore v. Colon</u>, No. 20-22032, 2020 WL 5868179, at *4 (S.D. Fla. July 27, 2020), <u>adopted by</u>, 2020 WL 5848687 (S.D. Fla. Sept. 30, 2020).  However, that view appears to be largely based on the language in <u>McGee</u>, which, after <u>Santiago-Lupo</u>, is likely no longer binding.

**B.    Legal Framework for Evaluating a Motion to Dismiss for Failure to Exhaust Administrative Remedies**

"Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because exhaustion "ordinarily does not deal with the merits" of a particular cause of action.  Bryant, 530 F.3d at 1374 (internal punctuation and citation omitted).  Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court.  Id.  In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record."  Id. at 1376.

A respondent may raise an inmate-petitioner's failure to exhaust as an affirmative defense.  See Jones, 549 U.S. at 216; Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at 1209.  When so raised, "[respondents] bear the burden of proving that the [petitioner] failed to exhaust his administrative remedies."  Pearson, 665 F. App'x at 867 (quoting Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)); see also Trevari v. Robert A. Deyton Det. Ctr., 729 F. App'x 748, 752; White v. Berger, 709 F. App'x 532, 541 (11th Cir. 2017); Dimanche v. Brown, 783 F.3d 1204, 1210 (11th Cir. 2015); Turner, 541 F.3d at 1082.

In Turner, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies.[3]  541 F.3d at 1082.  First, courts "look[] to the factual allegations in the [respondent's] motion to dismiss and those in the [petitioner's] response, and if they conflict, takes the [petitioner's] version of the facts as true."  Id.; see also

---

[3]    Although Turner involved exhaustion requirements within the context of a 42 U.S.C. § 1983 action, it appears the two-step process set forth in Turner is no less applicable to a § 2241 proceeding.  See McCoy v. Glidewell, Civil Action No. 4:11-cv-1683, 2012 WL 3716872, at *5 (D.S.C. June 18, 2012) (noting § 2241's exhaustion requirements and Turner's application of exhaustion standards to a § 2241 petition); Blevins v. FCI Hazelton Warden, 819 F. App'x at 856 (11th Cir. 2020) (applying Turner in the § 2241 context).

Bracero v. Sec'y, Fla. Dep't of Corr., No 17-14278, 2018 WL 3861351, at *1 (11th Cir. 2018).

This prong of the Turner test assesses whether there is a genuine dispute of material fact

regarding the [petitioner's] failure to exhaust.  Glenn v. Smith, 706 F. App'x 561, 563–64 (11th

Cir. 2017) (citing Turner, 541 F.3d at 1082); Pavao, 679 F. App'x at 824.  "The court should

dismiss [the action] if the facts as stated by the prisoner show a failure to exhaust."  Abram, 759

F. App'x at 860 (quoting Whatley I, 802 F.3d at 1209); Turner, 541 F.3d at 1082 ("This process

is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

"If the complaint is not subject to dismissal at the first step, where the [petitioner's]

allegations are assumed to be true, the court then proceeds to make specific findings in order to

resolve the disputed factual issues related to exhaustion."  Turner, 541 F.3d at 1082; see also

Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is]

permitted to make factual findings to resolve the issue of exhaustion.").  After resolving the

factual disputes, the court then decides whether, "based on those findings, [respondent has]

shown a failure to exhaust."  Bracero, 2018 WL 3861351, at *1 (quoting Whatley I, 802 F.3d at

1209).  Once respondents have shown an administrative remedies procedure exists and the

petitioner did not follow the procedure, the petitioner "bears the burden of proving the . . .

procedure effectively was unavailable to him."  Nuckles v. Yeager, Case No. 1:25-cv-00125,

2025 WL 1490057, at *4 (N.D. Ala. May 22, 2025) (referencing Geter v. Baldwin State Prison,

974 F.3d 1348, 1356 (11th Cir. 2020)).

Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative

remedies, the court may consider evidence outside the pleadings."  Berger, 709 F. App'x at 541

n.4 (citing Bryant, 530 F.3d at 1376); Glenn, 706 F. App'x at 563–64; Singleton v. Dep't of

Corr., 323 F. App'x 783, 785 (11th Cir. 2009) (citing Bryant, 530 F.3d at 1376) ("A district court

may properly consider facts outside of the pleadings to resolve a factual dispute regarding

exhaustion where the factual dispute does not decide the merits and the parties have a sufficient

opportunity to develop the record.").  However, if the issue of exhaustion is "intertwined with the

merits of a claim protected by the Seventh Amendment," parties are entitled to a jury trial on that

issue and dismissal is not appropriate.  Perttu v. Richards, 605 U.S. ___, 145 S. Ct. 1793, 1800

(2025).

    **C.**    **The BOP's Administrative Remedies Procedures**

The BOP has established an administrative remedy procedure through which an inmate

may seek review of an issue related to any aspect of his imprisonment.  28 C.F.R. § 542.10 *et*

*seq*.  The Administrative Remedy Program applies to all inmates incarcerated in penal

institutions the BOP operates.  Id. § 542.10(b).  Under the applicable Regulations, an inmate

must generally first seek to resolve an issue of concern informally by presenting the issue to

correctional staff at the local facility ("BP-8").  Id. § 542.13(a).  If this does not resolve the

matter, an inmate must submit a formal written administrative remedy request to the Warden

("BP-9") within 20 calendar days of the incident giving rise to the administrative remedy

request.  Id. § 542.14(a).  The Warden has 20 days to respond.  Id. § 542.15(a).  If unsatisfied

with the Warden's response, an inmate may appeal with the Regional Director ("BP-10") within

20 days of the Warden's response.  Id.  The Regional Director has 30 days to respond.  Id. §

542.18.  If dissatisfied with the Regional Director's response, an inmate may take a final appeal

("BP-11") to the BOP's Central Office, Office of General Counsel in Washington, D.C., within

30 days of when the Regional Director signed the response.  Id. § 542.15(a).  The Central Office

has 40 days to respond.  Id. § 542.18.  Appeal to the BOP's Central Office is the final step in the

BOP's administrative remedy process.  Id.  If BOP officials cannot respond to the request or

appeal within the allotted time, the response time can be extended once: by 20 days at the institutional level, by 30 days at the regional level, or by 20 days at the Central Office level. Staff are to inform the inmate of the extension in writing.  Id.

An inmate must complete all three steps of the administrative remedies process to have exhausted his administrative remedies.  A submission at any of these levels can be rejected, with notice to the inmate why the submission was rejected and, if correctable, to allow the inmate a reasonable time for re-submission.  Id. § 542.17(b).  Additionally, if an inmate does not receive a response within the allotted time for response at any level, including any extensions, the inmate is to consider the lack of a response to be a denial at that level.  Id. § 542.18.  The BOP uses a system known as "SENTRY to log and track inmate [remedies requests] as they progress through the administrative remedy process."  Jackson v. Gabby, Case No. 3:23-cv-4674, 2024 WL 1515703, at *4 (N.D. Fla. Feb. 28, 2024).

### D.    Analysis of Fernandez's Efforts at Exhaustion

The parties' accounts plainly conflict: Respondent asserts that Fernandez did not exhaust his available administrative remedies, and Fernandez asserts that he did.  Thus, the Court accepts as true Fernandez's assertion that he did exhaust his available remedies and must resolve this factual dispute.  The parties have had the chance to sufficiently develop the record.

The evidence submitted by the parties demonstrates that Fernandez filed administrative remedies requests at each level concerning the issues he raises in his Petition.  Respondent states Fernandez filed Administrative Remedy Number 1141102 in 2022, and those filings have no bearing on his claims arising in 2024.  Doc. 4-1 at 3.  However, Fernandez presents argument and evidence showing that he filed an administrative remedy request on January 12, 2025, to raise the claims he presents in his current Petition.  Doc. 6 at 9, 16; see also Doc. 13 at 4–5

(Fernandez's assertion he filed another administrative remedy request in April 2025 without response).  In this request, Fernandez asks to have his FSA assessment sheet updated to reflect accurate start and end dates.  Doc. 6 at 16 (bearing Remedy Number 1226007-F1).  Fernandez's remedy was rejected at the institutional level (BP-9) because he "previously filed[]" this request and was referred to Remedy Number 1141102-F.  Id. at 17.  Remedy Number 1141102-F is Fernandez's initial formal remedy for "FSA credit," which he began in November 2022 and concluded on May 1, 2023.  Doc. 4-1 at 17; Doc. 1-1 at 11.

Specifically, the Court notes that the Warden responded to Fernandez's request (1141102-F) on November 21, 2022.  Doc. 1-1 at 12.  After this response, Fernandez filed a BP-10 appeal and received a response on January 11, 2023.  Id. at 13–14.  Fernandez completed the remedies process by filing a BP-11 on February 2, 2023, and received a response from the Central Office on May 1, 2023.  Id. at 15–16; see also Doc. 6 at 8 (referencing his Administrative Remedy requests, as presented through his Petition).  Thus, it appears Fernandez did exhaust those administrative remedies that were available.[4]  Furthermore, if Fernandez did not exhaust, I would waive the exhaustion requirement under McCarthy, given that the BOP communicated to Fernandez that he has already submitted administrative remedies requests on these same claims.

For these reasons, the Court should deny this portion of Respondent's Motion to Dismiss.

## II.    Respondent Fails to Show That This Court Lacks Jurisdiction Under the APA to Review Fernandez's FSA Claims

Fernandez asserts the BOP must follow the language of 18 U.S.C. § 3624(g), which states the Director "shall" transfer eligible prisoners to pre-release custody or supervised release.

---

[4]      It seems Fernandez's Second Chance Act claims arise from his FSA claims, i.e., but for the BOP's alleged failure to give Fernandez credit under the FSA, his Second Chance Act claims would not exist.  To the extent Fernandez's Second Chance Act claims are to be considered only as to Request Number 1226007-F1, Fernandez was informed he had already raised this issue through the remedies process, as discussed.

Doc. 1 at 6, 16, 18.  Thus, under the statutory language, Fernandez maintains the BOP should

grant him placement into a residential reentry center or prerelease custody.  Id. at 20.

Respondent asserts the APA precludes judicial review of an adverse agency action if a

statute precludes review or if the agency action is in the agency's discretion.  Doc. 4 at 7

(quoting 5 U.S.C. § 701(a)).  Respondent also asserts 18 U.S.C. § 3625 precludes this Court's

review of the BOP's determination that Fernandez is not entitled to placement in a residential

reentry center.  Id. at 8.

Under the APA, a petitioner may use habeas corpus to challenge a BOP action.  See

5 U.S.C. § 703.  However, in 18 U.S.C. § 3625, Congress specified the provisions of the APA

governing judicial review, §§ 701–06, were inapplicable to "the making of any determination,

decision, or order under" any provision of 18 U.S.C. §§ 3621 to 3626.  The Eleventh Circuit

Court of Appeals has explained § 3625 expressly precludes judicial review of agency

adjudicative decisions but not rulemaking decisions, and courts generally lack jurisdiction under

§ 3625 even in a § 2241 habeas action.  Cook v. Wiley, 208 F.3d 1314, 1319 (11th Cir. 2000);

see also Reeb v. Thomas, 636 F.3d 1224, 1227 (9th Cir. 2011) ("To find that prisoners can bring

habeas petitions under 28 U.S.C. § 2241 to challenge the BOP's discretionary determinations

made pursuant to [Title 18, Chapter 229, Subchapter C] would be inconsistent with the language

of 18 U.S.C. § 3625."); Martin v. Gerlinski, 133 F.3d 1076, 1079 (8th Cir. 1998) ("[I]t is

apparent that § 3625 precludes judicial review of agency adjudicative decisions but not of

rulemaking decisions.").  Where Congress precludes judicial review of an agency decision by

statute, judicial review of that decision is limited to whether the agency acted outside its statutory

limits or violated the Constitution.  See Webster v. Doe, 486 U.S. 592, 597, 603 (1988);

Santiago-Lebron v. Fla. Parole Comm'n, 767 F. Supp. 2d 1340, 1351 (S.D. Fla. 2011); Paradis v.

Keller, 2011 WL 2790480, *4 n.3 (N.D. Ga. June 13, 2011); Klatch v. Rathman, No. 1:13-CV-01452, 2014 WL 537021, at *11 (N.D. Ala. Feb. 10, 2014); see also Rodriguez v. Johns, Civil Action No. 5:17-cv-134, 2018 WL 4102854, at *2–3 (S.D. Ga. July 26, 2018), report and recommendation adopted, 2018 WL 4100695 (S.D. Ga. Aug. 28, 2018).

Respondent has not sufficiently shown that judicial review of Fernandez's claims is precluded by § 3625.  Fernandez argues that the BOP is not following the language of § 3624(g)(2), i.e., the BOP is not applying the mandatory "shall" of this statute (eligible prisoners "shall" be placed in prerelease custody); see also 18 U.S.C. § 3632(d)(4) (An eligible prisoner "shall" earn time credits); Doc. 1 at 18.  Fernandez also challenges the BOP's regulation, which he contends is contrary to the language of the statute.  Doc. 1 at 18.  Respondent says Fernandez "requests this Court to review the individualized administrative decision that calculated his FSA time credits."  Doc. 4 at 6.  But that characterization overlooks the specifics of Fernandez's claims.  Indeed, at least some portion of Fernandez's claim appears to fall outside of the BOP's discretionary acts and, therefore, is subject to judicial review.[5]  This is not to say Fernandez's FSA claims will be ultimately successful, only that the BOP's decision to not place Fernandez in pre-release custody does not appear to have been made within the confines of § 3624(g); thus, the APA does not preclude this Court's review of Fernandez's FSA claims under § 3625.  Torres v. Jenkins, Civil Action No. 1:23-cv-2885, 2024 WL 6473642, at *3 (N.D. Ga. May 1, 2024) (recognizing § 3625 precludes judicial review of the BOP's

---

[5]    Fernandez also argues that the BOP made errors in calculating his FSA credits.  Doc. 6 at 3.  It is unclear if Fernandez contends the BOP made some factual error, made an error in one its discretionary decisions, or failed to properly apply statutory requirements.  It is also unclear how these alleged errors have impacted the BOP's application of credits, if at all.  To the extent Fernandez is challenging a discretionary determination made by the BOP, such a challenge is likely not subject to judicial review.  If the Court adopts this Report and Recommendation, the parties will have additional opportunity to address this issue in their Answer and Reply.

discretionary determinations but noting the Eleventh Circuit has indicated a court can review a petitioner's claim that the BOP's interpretation of a statute is unreasonable and constitutional claims, despite the language of § 3625); see also Briones-Pereyra v. Warden, Case No. 1:23-cv-01718, 2024 WL 4141380, at *2 (E.D. Cal. Sept. 12, 2024) ("Although a district court has no jurisdiction over discretionary designation decisions, it does have jurisdiction to decide whether the [BOP] acted contrary to established federal law, violated the Constitution, or *exceeded its statutory authority* when it acted pursuant to 18 U.S.C. § 3621." (emphasis in original) (quoting Rodriguez v. Copenhaver, 823 F.3d 1238, 1242 (9th Cir. 2016)); Woodley v. Warden, USP Leavenworth, Case No. 24-3053, 2024 WL 2260904, at *2–4 (D. Kan. May 15, 2024) (reviewing relative merits of petitioner's FSA claims under §§ 3624 and 3632 without mention of APA).

Because Respondent has not shown that § 3625 precludes judicial review of Fernandez's claims, the Court should **DENY** this portion of Respondent's Motion.

**III.    Respondent Does Not Show That This Court Lacks Jurisdiction Under the APA Regarding Fernandez's Pre-Release Custody Claims**

The Court agrees that the BOP is to decide where a prisoner is to be housed and that decision is not subject to judicial review.  18 U.S.C. §§ 3621, 3625.  However, Fernandez's contention is more nuanced than a "simple" request that he be placed in a specific location. Instead, Fernandez contends that the BOP has not properly credited his sentence under the FSA and the Second Chance Act and, as a result, he has not been placed in pre-release custody, as § 3624(g) requires.  See Woodley, 2024 WL 2260904, at *4 (noting, while the FSA requires transfer to pre-release custody for eligible prisoners, the BOP retains the discretion to decide the particular placement or facility); Williams v. Warden, FCI Berlin, ___ F. Supp. 3d ___, 2025 WL 2207024, at *3 (D.N.H. Aug. 4, 2025) (citing Woodley favorably for the position the BOP

does not have discretion to delay or refuse transfer of an eligible prisoner to pre-release custody); but see Brenneman v. Salmonson, Civil Action No. 5:22-CV-7, 2025 WL 914352, at *1 (E.D. Tex. Mar. 26, 2025) ("[T]he BOP retains the discretion to determine whether to place Petitioner in another facility, transfer him to a [residential reentry program], or designate him to [home confinement].").  Again, this is not to say Fernandez will succeed in his claims, only that the Court can review the BOP's decision not to place Fernandez for pre-release custody as part of his FSA and Second Chance Act claims.  The Court should **DENY** this portion of Respondent's Motion.  If the Court adopts this Recommendation, Respondent should be prepared to file an Answer to Fernandez's Amended Petition on his FSA and Second Chance Act claims.  Doc. 3.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **DENY** Respondent's Motion to Dismiss and **DENY** Fernandez's request for injunctive relief.  I **DENY** the Motion for Expedited Ruling and Fernandez's requests for judicial intervention and for a hearing.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, No. 17-11264, 2020 WL 6039905, at *4 (11th Cir. Oct. 13, 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 2020 WL 6039905, at *4; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made herein.  Objections not meeting the specificity requirement set out above will not be considered by the District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 10th day of September, 2025.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA